**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KEITH RICKETTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Case No. CIV-17-529-STE** |
| | ) |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of the Social Security Administration denying Plaintiff's

application for benefits under the Social Security Act. The Commissioner has answered

and filed a transcript of the administrative record (hereinafter TR. ____). The parties have

consented to jurisdiction over this matter by a United States Magistrate Judge pursuant

to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on

the Court's review of the record and the issues presented, the Court **REVERSES AND**

**REMANDS** the Commissioner's decision.

## I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's

application for benefits. Following an administrative hearing, an Administrative Law Judge

(ALJ) issued an unfavorable decision. (TR. 18-33). The Appeals Council denied Plaintiff's

request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.  THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity between his alleged onset date of February 4, 2008 through his last date insured, June 30, 2013. (TR. 20). At step two, the ALJ determined Mr. Ricketts had the following severe impairments: degenerative disc disease of the back; diabetes; obesity; depressive disorder; and anxiety disorder. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 21).

At step four, the ALJ concluded that Mr. Ricketts retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) in that the claimant was able to lift, carry, push and/or pull ten pounds occasionally and less than ten pounds frequently; sit for the total of six hours throughout an eight-hour workday; and, stand and/or walk the total of two hours throughout an eight-hour workday. The claimant was able to occasionally kneel, crouch, crawl, stoop, and climb ramps and stairs, but was not able to climb ladders, ropes, or scaffolds. The claimant was able to adapt to work situations. The claimant was able to perform simple and some complex tasks with routine supervision. The claimant was able to interact appropriately with supervisors and co-workers and have occasional public contact, but no customer service work.

(TR. 24). With this RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (TR. 32). As a result, the ALJ made additional findings at step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 64). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 64-65). The ALJ adopted the testimony of the VE and concluded that Mr. Ricketts was not disabled based on his ability to perform the identified jobs. (TR. 33).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in her consideration of a treating physician's opinion which, in turn, affected the RFC and step five findings.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.    THE ALJ'S EVALUATION OF DR. ODOR'S OPINION

Plaintiff's treating physician, Dr. James Odor, opined that Plaintiff suffered limitations involving "restricted" bending and twisting and that Plaintiff could not crawl or climb. (TR. 522, 526, 528, 530). Mr. Ricketts alleges that the ALJ erred in evaluating these opinions, by failing to weigh the opinions and include related limitations in the RFC. (ECF No. 13:2-11). The Court agrees with Mr. Ricketts, but only finds reversible error with respect to the limitation involving twisting.

### A.    ALJ's Duty to Assess a Treating Source's Opinion

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, 404.1513(a). The Commissioner generally gives the greatest weight to the medical opinions of a "treating source," which includes a physician who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship." *Id.* §§ 404.1502, 404.1527(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

An ALJ must follow a particular analysis in evaluating a treating source's opinion. First, the ALJ has to determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). An opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled

to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

In doing so, the ALJ must assess the opinion under a series of factors which include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1331-1332 (internal quotation marks omitted); *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 404.1527.

Ultimately, an ALJ "must give good reasons for the weight assigned to a treating physician's opinion," and "[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Allman*, 813 F.3d at 1332. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her

5

own credibility judgments, speculation, or lay opinion." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotation marks omitted).

### B. Dr. Odor's Opinions

Dr. Odor treated Plaintiff for back pain between February 2008 and March 2014. (TR. 511-579). On May 13, 2013, Dr. Odor stated that Plaintiff had limitations involving "no repetitive bending [or] twisting" and that Mr. Ricketts could not crawl or climb. (TR. 529-30). Although at that time, Dr. Odor stated that Plaintiff had achieved "maximum medical improvement," additional records from Dr. Odor were dated June 20, 2013, August 26, 2013, January 13, 2014, February 20, 2014, and March 4, 2014. (TR. 517-519, 521-522, 526, 528-530). In the June and August records, Dr. Odor indicated that Plaintiff's limitations had not changed since the May 13, 2013 opinion. (TR. 526, 528). On January 13, 2014, Dr. Odor stated that he would send a final report regarding Plaintiff's "permanent restrictions" following a "functional capacities evaluation" (FCE). (TR. 521). The FCE was performed on February 20, 2014 and stated that Mr. Ricketts could "occasionally" climb, but that Plaintiff refused to be tested on abilities involving axial rotation, crouching and stooping. (TR. 518). In the report and final letter dated March 4, 2014, Dr. Odor stated:

> Mr. Ricketts' positional/agility tests indicate the position of kneeling, crouching/squatting, stooping, axial rotation and overhead reaching were unable to be evaluated today secondary to Mr. Ricketts voluntarily ending his FCE. . . . This report indicated the presence of low physical effort [and] would indicate the result of this evaluation for [Plaintiff] **IS NOT** a reliable representation of his current safe functional abilities.

(TR. 518-519) (emphasis in original).

## C.      Error in the Evaluation of Dr. Odor's Opinions

The ALJ summarized a good deal of Dr. Odor's treatment notes and specifically cited Dr. Odor's May 13, 2013 opinion involving "permanent restrictions including no repetitive bending [or] twisting." (TR. 26). However, the ALJ did not state whether she believed the opinion or was according it any weight, nor did she make any comment on: (1) Dr. Odor's May 13, 2013 limitation involving Plaintiff's inability to climb or crawl, or (2) Dr. Odor's FCE report. (TR. 25-26). The RFC allowed for "occasional" bending,[1] crawling, and climbing ramps and stairs, and no climbing ladders, ropes, and scaffolds. (TR. 24). The RFC did not discuss twisting.

Plaintiff takes issue with the ALJ's treatment of Dr. Odor's opinion, arguing: (1) the ALJ failed to assign any weight to Dr. Odor's May 13, 2013 opinions, (2) the ALJ failed to include Dr. Odor's May 13, 2013 limitations on crawling, climbing, bending, and twisting in the RFC, and (3) the error in the hypothetical negatively impacted the step five findings regarding Plaintiff's ability to perform other jobs. (ECF No. 13:2-11).[2]

The Court agrees that the ALJ erred when she: (1) summarized, yet failed to comment on, Dr. Odor's May 13, 2013 opinions involving Plaintiff's inability to crawl or

---

[1]   The actual RFC allowed for occasional stooping, crouching, and kneeling. (TR. 24). The Social Security Administration has defined these three postural activities as "bending." SSR 85-15, at *2 (1985).

[2]   Plaintiff also argues that the ALJ failed to explain why opinions from a medical expert and agency physicians received more weight than Dr. Odor, the treating physician. (ECF No. 13:7). but the Court need not address the argument as it may be affected following the remand and reconsideration of Dr. Odor's Opinion.

climb or engage in in repetitive bending and twisting and (2) failed to comment at all regarding the FCE report, which Dr. Odor stated would reflect Mr. Ricketts' "permanent restrictions." *See Allman*, 813 F.3d at 1332 (noting that an ALJ "must give good reasons for the weight assigned to a treating physician's opinion," and "[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight.").

The next inquiry is whether the errors were harmless. An initial issue involves a discussion of what, exactly, Dr. Odor's opinions were on the limitations involving climbing, crawling, bending, and twisting. Plaintiff argues that the RFC and resulting hypothetical failed to reflect the May 13, 2013 opinions involving no climbing or crawling and no repetitive bending or twisting. (ECF No, 13:3, 8). But Dr. Odor stated that Plaintiff's "permanent restrictions" would be issued following the FCE report, and that report: (1) allowed for "occasional" climbing, (2) failed to mention crawling, and (3) made no comment on Plaintiff's ability to twist and/or bend due to Plaintiff's failure to perform those activities. (TR. 517-518).

Even though Plaintiff relies on the May 13, 2013 opinions, he admits that "since . . . the jobs [cited by the VE and adopted by the ALJ] do not require stooping or crouching, the failure to include the bending limitation in the RFC is, indeed, harmless error." (ECF No. 13:8). Plaintiff is correct. *See Jones v. Berryhill*, Case No. 17-1107, slip op. at 3-4 (10th Cir. Dec. 21, 2017) (concluding that "any error in the ALJ's step-four finding was harmless" given the ALJ's alternative finding at step five that the plaintiff could work in a

job which did not require the particular abilities challenged by the plaintiff); *Lara v. Colvin,* No. CIV–12–1249–L, 2014 WL 37746, at *1, *4 (W.D. Okla. Jan. 6, 2014) (holding that the ALJ's failure to include limitation to relating with supervisors and peers on a superficial basis in RFC was harmless error where one of the occupations identified by the VE did not require interaction on more than a superficial basis); *cf. Chrismon v. Colvin,* 531 F. App'x. 893, 899–900 (10th Cir. 2013) (holding that ALJ's failure to include all limitations from RFC in hypothetical question to VE was harmless when two of the four occupations identified by the VE were consistent with RFC); *see generally Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1162–63 (10th Cir. 2012) (indicating that harmless-error analysis may be appropriate where ALJ did not properly consider evidence but "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (internal quotation marks omitted)).

This same "harmless error" analysis can also be applied to the limitations involving crawling and climbing, regardless of whether Dr. Odor's final opinion on these issues was the May 13, 2013 opinion or the FCE report, because these abilities were not required in any of the jobs relied on by the VE and adopted by the ALJ. *See* DOT #690.685-194 (Grinding Machine Operator); DOT #690.685-258 (Laminator I); and DOT #669.687-014 (Dowel Inspector); *see* TR. 33.

However, the Court reaches a different conclusion regarding the limitation on twisting. As discussed, an initial issue involves a determination of what Dr. Odor's opinion was regarding Plaintiff's ability to twist. On May 13, 2013, the physician stated that

Plaintiff could not engage in repetitive twisting. (TR. 529-30). However, post-dating this opinion was the FCE report, where Dr. Odor stated that Plaintiff failed to engage in "axial rotation" which resulted in a finding that the report was "not reliable" regarding Mr. Rickett's functional abilities. (TR. 517-518). Because Dr. Odor had stated that the FCE would reflect Plaintiff's "permanent retractions," a reasonable person could presume that the FCE report would override any prior opinions on the subject.

Assuming that presumption to be true, the record was ambiguous on the issue of twisting when the Court considers Dr. Odor's May 13, 2013 opinion (no repetitive twisting) and an opinion from a treating physician's assistant on June 7, 2016, that Plaintiff had been suffering severe back pain which was "ach[ing], deep, discomforting, stabbing, and throbbing" when he did any "twisting movement." (TR. 650). Because evidence exists which indicates that Plaintiff may suffer from a limitation on twisting, but the treating physician's final opinion on the matter was inconclusive, the ALJ should have ordered a consultative examination to resolve the matter. *See Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993) ("It matters that the ALJ did not order a consultative examination or call a vocational expert because the medical evidence in the record is inconclusive[.]"); *Hawkins v. Chater,* 113 F.3d 1162, 1169 (10th Cir. 1997) (an ALJ must order a consultative exam when there is a "reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability.").

Without resolution of a final opinion regarding Plaintiff's ability to twist, the Court cannot further discuss the ALJ's treatment of Dr. Odor's opinion on the matter. However, for the sake of argument, assuming that the relevant opinion was Dr. Odor's May 13, 2013 opinion (as Plaintiff asserts) the ALJ would have erred in failing to discuss the opinion or assign it weight, *see supra*, and the Court would not have deemed the error harmless. As Plaintiff notes, testimony from a VE is required regarding whether a particular job could be performed with a twisting limitation because that particular limitation is not addressed by the Selected Characteristics of Occupations (SCO) which applies to jobs outlined in the DOT. *See Mehlohoff v. Colvin*, 2015 WL 4666158, at *10 (N.D. Okla. 2015).[3] Here, the VE did not testify regarding whether an individual with a twisting limitation could perform the identified jobs, precluding a finding of harmlessness.

In sum, the ALJ erred in failing to explain the weight he provided to any of Dr. Odor's opinions. On remand, the ALJ should re-evaluate Dr. Odor's opinion, and if

---

[3] In *Mehlohoff*, a treating physician imposed twisting limitations on the plaintiff and the ALJ noted the opinion and stated that the RFC was consistent with the opinion. *Mehlohoff*, at *9. On appeal, the Court found that in fact, the RFC was not consistent with the opinion on twisting, and that the error was not harmless, because "The SCO does not address the physical demand of twisting, so the ALJ would have to rely on the testimony of a vocational expert to determine whether plaintiff could perform other work with a limitation on twisting." *Id.* at *10. Ms. Berryhill disputes Mr. Ricketts' reliance on *Mehlohoff* stating that the district court only remanded "for clarification of a physician's opinion that the claimant would lift, bend, *or* twist only 15 times an hour." (ECF No. 15:8, n. 6) (emphasis in original, internal citation omitted). Defendant is wrong. The district court remanded because The ALJ misstated the actual twisting limitation and failed to explain why it was omitted from the RFC. As a result, the district court stated that the ambiguity, not the existence of the RFC as the ALJ had stated, should be "clarified on remand." *Mehlohoff v. Colvin*, 2015 WL 4666091, at *6 (N.D. Okla. Aug. 6, 2015). Furthermore, the district court did not reject the magistrate judge's findings regarding the necessity of VE testimony on the issue of twisting, as Ms. Berryhill implies.

necessary, seek a consultative examination for clarification of any issues regarding Plaintiff's work-related limitations. The ALJ shall explain his reasons for the weight accorded to Dr. Odor's opinions so that any subsequent reviewer is able to ascertain the ALJ's reasoning.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

ENTERED on December 28, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE